528 A.2d 1381

**In the Matter of Michael Ronald MONTENEGRO, Jr.**

**Appeal of Michael Ronald MONTENEGRO, Sr.,
Mary Ann Taglioli.**

Superior Court of Pennsylvania.

Submitted June 8, 1987.

Filed July 17, 1987.

Timothy J. Savage, Philadelphia, for appellants.

Brad Cooper, Philadelphia, for participating party.

Before CIRILLO, President Judge, and TAMILIA and WATKINS, JJ.

TAMILIA, Judge:

Appellant in this case, Michael Ronald Montenegro, Sr., appeals from the Order of the lower court which denied his petition to amend the birth certificate of Michael Ronald Montenegro, Jr., a minor child.

The child in this case was born out of wedlock on July 10, 1978. Michael Ronald Montenegro, Sr., was designated on the birth certificate as father, and the child was given the name Michael Ronald Montenegro, Jr. In September of 1980, the appellee/mother married the appellant and together, they had a daughter, Carmala Montenegro, who currently resides with appellee/mother and Michael Montenegro, Jr. The children attend the same elementary school.

In 1985, after separating from appellee/wife, appellant questioned the paternity of the child and proved through blood tests that he was not, in fact, the biological father of Michael Ronald Montenegro, Jr. Appellant then motioned for vacation of support for the child; that motion was granted on July 21, 1985. On August 14, 1986, appellant filed a petition to amend the birth certificate requesting that the certificate be amended to delete appellant's name as father and also to change the surname of the child and

substitute the surname of the natural mother therefor. Argument was heard before the lower court on January 5, 1987 (mistakenly entered as January 6, 1986 on the Order) and, on January 6, 1987, the court entered an Order striking from the certificate the name of Michael Ronald Montenegro, Sr., as father. (Slip Op., Zaleski, J., 3/6/87, p. 1.) On February 4, 1987, appellant filed this appeal.

We find the lower court properly determined it was without subject matter jurisdiction to order a change of name. Our legislature has decided "[t]he Court of Common Pleas of any county may by Order change the name of any person resident in the county." 54 Pa.C.S.A. § 702. The trial court, in its Opinion, said that it was not disputed that the minor child resides in the state of New Jersey. Thus the Court of Common Pleas of Philadelphia County was correct in ruling it was without power to order the change sought by the appellant.

Additionally, the trial court's determination that a change of name would not be in the child's best interest was appropriate. Recently, this Court said that the child's best interests unquestionably must control in a proceeding to change a minor child's surname. *Petition of Schidlmeier by Koslof,* 344 Pa.Super. 562, 496 A.2d 1249 (1985) (citing *Petition of Christjohn,* 286 Pa.Super. 112, 428 A.2d 597 (1981)).[1]

1. The best interests rule has been widely accepted in the context of petitions to change a minor child's name. See e.g., *In re Marriage of Schiffman,* 28 Cal.3d 640, 647, 620 P.2d 579, 583, 169 Cal.Rptr. 918, 922 (1980) ("[T]he rule giving the father, as against the mother, a primary right to have his child bear his surname should be abolished. Henceforth, as in parental custody disputes, the sole consideration when parents contest a surname should be the child's best interest."); *In re Marriage of Presson,* 102 Ill.2d 303, 80 Ill, Dec. 294, 296, 465 N.E.2d 85, 87 (1984) ("[A] change in a minor's surname shall be allowed only when the court finds that the change is in the best interests of the minor."); *Application of Saxton,* 309 N.W.2d 298, 302 (Minn.1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982) ("No preference is accorded either the paternal or maternal surname.... When one parent seeks to change the surname of a child, the other parent has standing to object and the resolution of the dispute hinges on the best interests of the child."); *Cohee v. Cohee,* 210 Neb. 855, 317 N.W.2d 381, 384 (1982) ("[E]ach parent has an equal

Further, we said that the party urging the minor child's change of name has the burden of coming forward with evidence that the name change requested would be in the child's best interest, and that where a petition to change a child's name is contested, the court must carefully evaluate all of the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interest. Neither parent is to be accorded a presumption. *Koslof, supra.*

In *Christjohn, supra,* we recognized that in granting or refusing a name change petition after due hearing and notice, the court has wide discretion (citing *Petition of Falcucci,* 355 Pa. 588, 50 A.2d 200 (1947)). Our scope of review is limited to the question of whether the evidence is sufficient to support the decision reached by the court. *Christjohn, supra.*

Appellant, in his brief, argues: "there is no basis here for not granting the change since no evidence or claim of embarrassment to the child has been presented. On the other hand, appellant is humiliated by an illegitimate child bearing his name with the designation 'Junior'." (Brief of appellant at pp. 6–7.) Thus the lower court correctly determined the appellant failed to sustain his burden of proving the change would be in the child's best interest. "Clearly, the only interest advanced by this petition is that of petitioner." (Slip Op. at p. 2.)

Our legislature has determined that a person may at any time adopt and use any name, if such name is used consistently, nonfraudulently and exclusively (54 Pa.C.S.A. § 701(b)). This rule of law has its roots in English common law. In *Falcucci, supra,* the Supreme Court recognized that, at common law, no individual has such a property right to his name as to entitle him to prevent another from

right and interest in determining the surname of a child.... [T]he standard to be used ... is the best interests of the child."); *In re Fletcher,* 145 Vt. 209, 486 A.2d 627, 629 (1984) (court should "determine what is in the best interests of the child, and then decide ... whether the requested name change is warranted").

*Schidlmeier, supra,* 344 Pa.Superior Ct. at 569, n. 4, 496 A.2d at 1253, n. 4.

adopting it, unless that person's doing had such a fraudulent purpose as would justify equitable restraint.[2] The Court cited Lord Chelmsford's statement, "[t]he mere assumption of a name, which is the patronymic of a family, by a stranger who had never before been called by that name, whatever cause of annoyance it may be to the family, is a grievance for which our law affords no redress." *Id.* (Citing *DuBoulay v. DuBoulay*, [1869], 16 English Reports 638.)

The minor child in the case at hand adopted the name Michael Ronald Monenegro, Jr., at birth. Since that time, he has been using this name consistently, nonfraudulently and exclusively. Appellant married appellee; together they had another child and they named her Montenegro. Moreover, appellant, while not Michael Ronald Montenegro's biological father, has been a father to him during the early years of his life. Appellant cannot now argue that the child's use of appellant's name has a fraudulent purpose. In fact, the only impropriety in this case was the earlier finding, in the support proceeding, that the appellant was not the father of the child. This leads to the final matter we must comment on, as it was considered but not resolved by the lower court, that being, whether appellant had standing to bring this action.

 As stated earlier, appellant was designated on the birth certificate of the child as the father. He subsequently married the mother, thereafter living with the child in a family relationship, during which relationship a daughter was born. It was only upon separation five years after the marriage that appellant questioned his paternity of the child during a support proceeding. By obtaining a blood test, he was able to show that he was not the father of the child. For the following reasons, we hold for this case that finding is a nullity and provides no basis upon which the father can deny paternity and, therefore, precludes him from initiating

2. In *Falcucci,* the Court affirmed the change of name of a minor child from Benjamen R. Falcucci to Thomas R. Frame, over objections by Attorney Thomas E. Frame, Jr.

an action to enjoin the use of the paternal name. The following provisions appear at 48 P.S. § 167:

### § 167. Children; legitimacy; determination of paternity

(a) Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in general Assembly met, and it is hereby enacted by the authority of the same, That all children shall be legitimate irrespective of the marital status of their parents and in any and every case where children are born out of wedlock they shall enjoy all the rights and privileges as if they had been born during the wedlock of such parents, except as otherwise provided in Title 20 Pa.C.S.

(b) for purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

(1) If the parents of the child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

(3) If there is clear and convincing evidence that the man was the father of the child which may include a prior court determination of paternity.

This section provides a strong policy statement by the legislature that children shall be legitimate, and when putative fathers hold themselves out to be the father of the child, by marrying the mother and assuming responsibility for the care of the child ((b)(1)(2)), paternity is thereby determined ((b)). Since the requirements of the law had been met to establish paternity, the father was estopped from denying paternity five years later. Evidence of the blood tests, therefore, was inadmissible to disprove paternity for any purpose. In *Commonwealth ex rel. Weston v. Weston*, 201 Pa.Super. 554, 193 A.2d 782 (1963), this Court

held a husband was not entitled to the grant of a petition for a blood test where he had lived with his wife during the time children in question were conceived, and for several years after the birth of the children, and did not deny paternity until after separation of the parties. *See also Grassmyer v. Coleman,* 345 Pa.Super. 358, 498 A.2d 441 (1985) and *Commonwealth ex rel. Hall v. Hall,* 215 Pa.Super. 24, 257 A.2d 269 (1969). The concept of "estoppel", espoused above, was extended to the case of a putative father, who assumed the responsibility of a father in fact, by marriage to the mother subsequent to the child's birth, and indeed, by his support of the child and acknowledgment of paternity to immigration authorities. *Commonwealth ex rel. Gonzales v. Andreas,* 245 Pa.Super. 307, 369 A.2d 416 (1976). There, it was held, under circumstances almost identical to those of the present case (child born out of wedlock, marriage to the mother, assuming duties of a parent for several years), the father was estopped from denying paternity, and a previously entered support Order could not be revoked. The rationale and holding in *Gonzales* applies equally to a case where a support Order has not yet been entered. Since we conclude estoppel applies in this case to prevent the father denying paternity, we hold, for the purpose of the present proceeding, he is also estopped from denying paternity in order to enjoin the use of his name by the child.[3] Therefore, appellant has no standing to proceed with this action. It is of increasing importance during this period, when changes in culture, life style and procreation are rapidly impinging on previously held values and children are being conceived out of wedlock in greater numbers, that we assure their rights are protected.

After considering the record in this case and all relevant circumstances, we find appellant has failed to establish the change he requests is in the best interests of the child.

---

**3.** We are of course presented with the determination that resulted from the grant of the petition for blood tests and vacation of a previously entered support Order in the 1985 action. While that Order, unappealed from, is *res judicata* of that issue, we believe it does not bind us in this matter as the issue is not the same and that result was based on an error of law.

The lower court's denial of the petition is accordingly affirmed.

Order affirmed.